UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**DEAN MONACO**,                                          Case No. 3:14-cv-00617-KI

                Plaintiff,                        OPINION AND ORDER

    v.

**CAROLYN W. COLVIN, Acting
Commissioner of Social Security**,

              Defendant.

    George J. Wall
    1336 East Burnside Street, Suite 130
    Portland, OR 97214

          Attorney for Plaintiff

    S. Amanda Marshall
    United States Attorney
    District of Oregon
    Ronald K. Silver
    Assistant United States Attorney
    1000 SW Third Avenue, Suite 600
    Portland, OR 97201-2902

Page 1 - OPINION AND ORDER

Catherine Escobar
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

      Attorneys for Defendant

KING, Judge:

Plaintiff Dean Monaco brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for supplemental security income benefits ("SSI"). I affirm the decision of the Commissioner.

## BACKGROUND

Monaco filed an application for SSI on January 27, 2011, alleging disability beginning October 21, 2008. The application was denied initially and upon reconsideration. After a timely request for a hearing, Monaco, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on November 14, 2012.

On November 28, 2012, the ALJ issued a decision finding Monaco not disabled within the meaning of the Act and therefore not entitled to benefits. This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on February 26, 2014.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or

Page 2 - OPINION AND ORDER

mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

cause death or to last for a continuous period of at least twelve months.  42 U.S.C.

§§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and

1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for

determining if a person is eligible for either DIB or SSI due to disability.  The evaluation is

carried out by the ALJ.  The claimant has the burden of proof on the first four steps.  Parra v.

Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920.  First, the ALJ

determines whether the claimant is engaged in "substantial gainful activity."  20 C.F.R.

§§ 404.1520(b) and 416.920(b).  If the claimant is engaged in such activity, disability benefits are

denied.  Otherwise, the ALJ proceeds to step two and determines whether the claimant has a

medically severe impairment or combination of impairments.  A severe impairment is one

"which significantly limits [the claimant's] physical or mental ability to do basic work

activities[.]"  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe

impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities.  Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work.  20 C.F.R. §§ 404.1520(g) and 416.920(g).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance.  Id. (internal quotation omitted).  The court must uphold the ALJ's

findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations.  Id.

## THE ALJ'S DECISION

The ALJ found Monaco has the severe impairments of hepatitis C with fibrosis and thrombocytopenia, depressive disorder NOS, and anxiety disorder NOS.  The ALJ did not find these impairments, either singly or in combination, to meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  According to the ALJ, then, Monaco demonstrated a residual functional capacity ("RFC") to perform less than the full range of medium work, as follows:  he can frequently stoop and crouch; he can frequently reach above shoulder level bilaterally; he should avoid concentrated exposure to extreme cold; he can perform simple, routine, repetitive tasks with 1-2 step instructions; he should not have contact with the public; he can have occasional superficial interaction with co-workers regarding trivial matters; he should not have physical proximity to co-workers; and he can have occasional contact with supervisors.  Given this RFC, the ALJ concluded Monaco could perform other work in the national economy, such as cleaner, motel cleaner, and seedling puller.  He had no past relevant work.

## FACTS

Monaco, with a high school education, was 57 years old on the date he filed his application for disability.  Monaco alleges he is disabled due to depression, hepatitis C, and cirrhosis of the liver.  He told one doctor that he had worked for the water bureau for four months until he had an injury in about 1979, and then he worked as a barber for 30 years.  His reported earnings have never reached substantial gainful activity levels; he earned not quite $1200 in

2007, reflecting the highest earnings by far over the course of 17 years.  He had a heroin problem beginning in the 1970s until 1985.  He expressed a history as a child and young adult of taking Dilantin–an anti-seizure medication–and remembers his mother telling him he had suffered brain damage; he cannot recall (or never knew) any details about that history.

Disability Determination Services referred Monaco to William A. McConochie, Ph.D., for a psychodiagnostic evaluation on December 30, 2008.  Dr. McConochie spent 30 minutes with Monaco and noted clear speech, good eye contact, relevant and logical thought content, and smiling and relaxed affect.  Monaco did not feel depressed, but wanted counseling to help deal with his hepatitis, cirrhosis, and his mother's death.  Dr. McConochie estimated Monaco's intelligence to be in the low average range with a verbal IQ between 85 and 90.  Monaco could remember three unrelated words immediately, but none of them after several minutes; he had good attention and concentration for simple tasks.  He reported being able to grocery shop, cook meals, visit with friends, play with his dog, and rake leaves; he could rake leaves for several hours without taking a long break.  Dr. McConochie found no impairments or work limitations for Monaco.

Orlando Conty, M.D., treated Monaco's hepatitis C, anxiety, and depression from September through November 2008.  Monaco experienced no symptoms from the hepatitis C; Dr. Conty prescribed Wellbutrin and then lorazepam for Monaco's anxiety.  Dr. Conty advised Monaco to stop using marijuana as it was a risk factor for progression of his hepatitis C.

After being homeless for years, Monaco finally obtained housing in late 2010 with JOIN, a non-profit that helps individuals and families find housing.  Jose Gutierrez, Monaco's case worker at JOIN, wrote to explain that Monaco is a difficult client who is "extremely tangential"

in his thinking and conversation style.  Monaco's temper and emotions are also unpredictable; while Monaco "has left me scathing voicemails when he perceives that I have slighted him or not done my job correctly[,]" he also "is capable of giving wonderful compliments and can be extremely generous."  Tr. 262.  Gutierrez opined that Monaco has "a deep-seated, general distrust of most people" and believes everyone is lying to him.  Although Monaco seems to suffer from moderate back pain, Gutierrez thought his main limitations were social and emotional.

At the Outside In Clinic, Monaco discussed therapy for his hepatitis C and back pain between December 2010 and March 2011.  He decided not to pursue treatment for his hepatitis C.  He demonstrated a tender lumbar sacroiliac joint, but his range of motion was good.  He was cutting hair for JOIN.

Monaco met with Patrick Radecki, M.D., who tested Monaco's mental and physical status on July 21, 2011.  Dr. Radecki reported Monaco's tendency to ramble, but that he did "just fine" on the mental status exam.  Tr. 357.  Although Monaco complained of constant back pain initially, he then reported it "comes and goes" and he does not take medication for it on a daily basis.  Id.  He can ride a bike "for one hour easily," he has no problem sitting, he can stand for an hour, and he can cut hair for an hour at a time up to five hours with breaks.  Tr. 358.  Dr. Radecki observed Monaco to be emotionally stable, not disheveled at all, able to move around and take his shoes and socks off with great agility.  Monaco demonstrated a slight tenderness at the lumbosacral junction.  Based on his examination of Monaco, Dr. Radecki found "no evidence objectively of any limitation in maximum standing, walking, sitting, assistive devices, lifting, postural activities, manipulative activities, or workplace environmental activities."  Tr. 361.

A July 25, 2011 x-ray showed "severe lumbar spondylosis which is quite advanced and involves the L1-2 through L4-5 disc spaces. It is most advanced involving the L2-3 and L3-4 discs, related to the levoscoliosis." Tr. 356.

A day later, Monaco met with Justine Williams, Psy.D., for a psychiatric evaluation. He reported depression and anxiety, but was not on any medications. He spends his day with his dog, sleeping, reading, and sometimes going to the library. Dr. Williams noticed Monaco got off track and lost concentration throughout the interview, and that he had trouble remembering his work history and some specific dates and events. She reported he was arrogant and irritable initially, then passive and uncooperative, but once he became comfortable "he became more cooperative and much more talkative." Tr. 365. His willingness to talk was problematic as he "went off on lots of different tangents and the interview took a considerable amount of time just to get the information I did and I still was not able to get all the information I wanted as he became sidetracked with many of my questions and provided lots of extraneous details which I did not ask for." Tr. 365. She questioned whether he might have an attention deficit disorder, and thought he displayed "some deficits in his mental status examination such as poor immediate and recent memory." Tr. 368. Nevertheless, Dr. Williams opined Monaco could perform simple and repetitive tasks; she thought complex and detailed tasks, or working around a lot of people, would be difficult due to his focus problem. She also thought Monaco "would need some special accommodations such as a work space" to help him focus and avoid distractions. Tr. 368.

On three occasions between September 2011 and September 2012, Ken Flora, M.D., assessed Monaco's hepatitis C; Monaco remained asymptomatic. Screening revealed no evidence of liver cancer or other complications. Dr. Flora advised him to stop using marijuana as

it posed a risk factor for his liver; Monaco responded that he did not believe the doctor.  Dr. Flora described Monaco as "tangential and difficult to remain on track and somewhat dogmatic in his thinking, although he is oriented and asterixis[1] is negative."  Tr. 386.

In 2012, Monaco obtained treatment first from the Rose City Clinic (in September and October 2012) and then the Old Town Clinic (in November 2012).  His treatment at Rose City ended when his care provider expressed skepticism that he was having seizures in his sleep.  Although she offered to send him to a neurologist, she queried how Monaco would feel if the neurologist told him nothing was wrong; he answered that "someone will be in trouble," meaning the doctors who treated him 50 years ago or his mother.  He expressed anger at Dr. Flora, and his care provider offered to send him to a different doctor.  Finally, she suggested lorazepam was not indicated for long-term treatment of anxiety.  Monaco called later in the day to say he no longer wanted treatment from Rose City Clinic.

Richard Gil, M.D., saw Monaco at the Old Town Clinic; Monaco had "several minor complaints.  That throughout the visit he elaborates on very little.  Mostly we spoke about his current life and past life as a homeless musician."  Tr. 414.  With regard to any history of seizures, Dr. Gil told Monaco he had nothing to worry about.  Monaco's degenerative disc disease in his lumbosacral spine was "asymptomatic."  Tr. 416.  Monaco was not considering treatment for his hepatitis C.  Five days later, Monaco returned seeking lorazepam for anxiety.  He was late for the appointment with Elizabeth Cooper, a Psychiatric-mental Health Nurse Practitioner.  He talked a lot in the interview with pressured speech, and he said lorazepam was

---

[1]Asterixis is "a motor disorder characterized by jerking movements (as of the outstretched hands) and associated with various encephalopathies due especially to faulty metabolism." www.merriam-webster.com/medlineplus/asterixis (last visited May 7, 2015).

the only thing that helped with his anxiety.  He refused information on counseling and left saying

he did not want to see Cooper again.

## DISCUSSION

Monaco challenges the ALJ's decision on two fronts:  (1) his failure to include Monaco's

lumbar spondylosis as a severe impairment, and the associated failure to include any limitations

caused by the back impairment; and (2) his failure to accurately capture in the RFC Monaco's

marked difficulties in social functioning and moderate difficulties with concentration, persistence

and pace.

I.    Back Pain

The ALJ did not include Monaco's back pain as a severe impairment, despite the fact that

an x-ray supported a diagnosis of lumbar spondylosis.  However, the ALJ specifically referenced

the x-ray and opined that it demonstrated Monaco's complaints about back pain were generally

credible "and would cause some limitation in his ability to perform basic work activity consistent

with the above residual functional capacity assessment."  Tr. 28.  The ALJ gave great weight to

the state agency physician who opined Monaco can lift and carry 50 pounds occasionally and 25

pounds frequently; can stand and walk for 6 out of 8 hours; can sit for 6 out of 8 hours; and can

frequently stoop and crouch.  Tr. 94.  The ALJ concluded this evaluation was consistent with the

medical record and with Monaco's activities of riding a bicycle for one hour, cutting hair for one

hour at a time, raking leaves for a couple of hours, and performing household chores.  The ALJ

rejected Monaco's testimony that he had "constant back pain" when his medical records reflect

minimal treatment and his activities indicate a high level of activity.  The ALJ also gave little

weight to Dr. Radecki's opinion that Monaco would have no exertional limitations.

Page 10 - OPINION AND ORDER

Based on this summary of the ALJ's opinion, the ALJ erred in failing to specifically identify Monaco's lumbar spondylosis as a severe impairment; however, he accounted for any limitations associated with that impairment in the RFC. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).

Monaco disagrees that the RFC adequately captures his limitations, arguing the ALJ should have found credible his testimony that he can only stand for an hour at a time, for a total of five hours. When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. Id. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient to support an adverse credibility determination and the ALJ must rely on substantial evidence. Id. "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings

as to credibility and stating clear and convincing reasons for each." Robbins v. Soc. Sec.

Admin., 466 F.3d 880, 883 (9th Cir. 2006).[2]

The ALJ rejected Monaco's testimony based on his activities, including: riding a bicycle

for at least an hour (with the suggestion he could ride for longer), cutting hair for an hour without

stopping, raking leaves for a couple of hours at a time, sitting without limit, and performing

household chores. The ALJ also pointed to Monaco's limited treatment for back pain.

Monaco asserts he made the statements about raking leaves and performing chores in

2008, several years before his application date. He also argues his ability to bicycle and cut hair

for an hour each is not inconsistent with his testimony about the total length of time he can stand.

Finally, he contends his limited treatment for back pain is not a compelling justification to find

him not credible when there is no evidence his doctors thought other treatment would be helpful.

The statements Monaco made in December 2008 came three months after his alleged

onset date of disability and are, therefore, relevant to show a tendency to exaggerate his

symptoms. Additionally, his testimony about riding a bicycle was that he could "easily" do so

for an hour, suggesting he could ride for much longer. Tr. 358. As the ALJ also pointed out,

Monaco testified he could walk a mile; he described the source of pain from walking longer as

being in his feet. Finally, and most compelling, the ALJ gave Monaco the benefit of the doubt by

accepting he is limited more than any physician found him to be. The only functional assessment

in the record, undertaken by Dr. Radecki, found no work limitations necessary to accommodate

---

[2]The Commissioner preserves for appeal her disagreement with the clear and convincing
standard, rather than the more deferential regulatory requirement for specific reasons supported
by substantial evidence. Def.'s Br. 9. The Ninth Circuit has rejected her argument. See Burrell
v. Colvin, 755 F.3d 1133 (9th Cir. 2014) (reasserting that the ALJ must provide "specific, clear
and convincing reasons" to support a credibility analysis).

Monaco's back pain.  The state agency consultant, after reviewing the medical record, placed Monaco at medium work.  There is no evidence he required more than over-the-counter medication to treat his pain, or that he requested more aggressive treatment for his back pain. Parra, 481 F.3d at 750-51 (evidence of conservative treatment, consisting of the use of over-the-counter pain medications, is sufficient to discount a claimant's testimony on the severity of an impairment).  Indeed, Dr. Gil, who saw Monaco in November 2012, the last appointment in the record, noted Monaco's degenerative disc disease in his lumbosacral spine was "asymptomatic." Tr. 416.

Any error the ALJ made in failing to list lumbar spondylosis is harmless when the ALJ included some limitations in the RFC to address Monaco's back pain, when Dr. Radecki discerned no physical impairments, when Monaco's contemporaneous doctor visits indicated very little problem with his back, and when Monaco's activities suggest he is not as limited as he describes.  Although Monaco disputes that a limitation to medium work is sufficient to account for his back pain, the ALJ gave clear and convincing reasons to discount Monaco's testimony. The ALJ was not required to incorporate limitations that are not supported by substantial evidence.  Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

II.    Social Functioning

Monaco notes the ALJ characterized plaintiff as displaying "marked" difficulties in social functioning, in analyzing whether Monaco's anxiety or depression constituted a Listing-level impairment.  Monaco questions whether the ALJ's RFC limiting him to occasional contact with a supervisor–meaning up to 1/3 of the work day–adequately accounts for his "marked" difficulties in social functioning.  Monaco refers to Social Security Ruling 96-9p, which indicates

responding appropriately to supervision, co-workers and usual work situations, as well as handling changes in the work setting, are required for unskilled work. He disputes that as someone with a "marked" impairment in social functioning, he could meet these requirements for remunerative work. He contends the evidence reflects he should be limited to no contact with supervisors.

Hypothetical questions posed to a vocational expert must specify all of the limitations and restrictions of the claimant. Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001). If the hypothetical does not contain all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. Id.

The Commissioner notes the ALJ's RFC is supported by the evaluations of Dr. McConochie–finding no psychological limitations–and Dr. Williams–concluding Monaco might have "difficulty" getting along with people because of his irritability, but could perform simple, routine tasks. In addition, Dorothy Anderson, Ph.D., the consulting physician, concluded from all of the medical evidence that Monaco should have no public interaction but could tolerate normal supervisory contact and occasional co-worker contact. The ALJ accounted for this medical evidence in the RFC and Monaco has not challenged the ALJ's reliance on these medical opinions or offered any to contradict them. Monaco's interpretation of the evidence is an insufficient ground to reverse the ALJ's decision. Edlund, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.") Since the ALJ's RFC is supported by substantial evidence in the record, I do not disturb his decision.

Page 14 - OPINION AND ORDER

**CONCLUSION**

The findings of the Commissioner are based upon substantial evidence in the record and

the correct legal standards.  For these reasons, the court affirms the decision of the

Commissioner.

IT IS SO ORDERED.

DATED this ____12th____ day of May, 2015.


    ___/s/ Garr M. King_____
    Garr M. King
    United States District Judge